J-S59035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANGEL ROSARIO :
:
Appellant : No. 1890 EDA 2017

Appeal from the Judgment of Sentence January 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005039-2015

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 1, 2018**

Angel Rosario appeals *nunc pro tunc* from the judgment of sentence imposed on January 6, 2017.  Rosario was convicted in a non-jury trial of possession with intent to deliver a controlled substance (PWID), criminal conspiracy, and possession of a controlled substance.[1]  The trial judge sentenced Rosario to 15 to 30 months' incarceration, to be followed by four years of probation.  Rosario challenges the sufficiency of the evidence to sustain his convictions.  Based upon the following, we affirm.

The trial court's opinion fully sets forth the relevant facts and procedural history of this case.  We simply state that Rosario was arrested after police conducted drug surveillance, on January 19, 2015, in the area of the 3400 block of A Street, and stopped and arrested an individual, Benjamin Montalvo,

_____

[1] 35 P.S. § 780-116(a)(30), 18 Pa.C.S. § 903, and 35 P.S. § 780-113(a)(16), respectively.

who had been seen engaging in a suspected drug transaction with Richard Lugo, and with Rosario nearby. Montalvo was found with three clear Ziploc packets with pictures of black stick figures containing cocaine.

Rosario raises three issues for our review, as follows:

Did the court commit error by convicting [Rosario] of possession with intent to deliver a controlled substance when the evidence at trial was insufficient to prove that [Rosario] ever possessed or distributed a controlled substance?

Did the court commit error by convicting [Rosario] of conspiracy to deliver a controlled substance when the evidence at trial was insufficient to prove that [Rosario] entered into any agreement with any other individual to distribute a controlled substance?

Did the court commit error when it convicted [Rosario] of possession of a controlled substance when the evidence at trial was insufficient to establish that [Rosario] ever possessed a controlled substance?

Rosario's Brief at 2.[2] Rosario contends the evidence at trial simply shows he engaged in conversation with Mr. Lugo, and the Commonwealth failed to present any evidence of an agreement between himself and Mr. Lugo regarding the distribution of a controlled substance, or any prior relationship. He further points out a search of his person uncovered only a small amount of currency and no controlled substances.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well reasoned opinion of the Honorable Kai N. Scott,

---

[2] Rosario timely complied with the order of the trial court to file a Rule 1925(b) statement of errors complained of on appeal, following the grant of an extension of time, and preserved his sufficiency claims.

we conclude no relief is due. The trial court opinion thoroughly and properly disposes of the sufficiency issues raised in this appeal. **See** Trial Court Opinion, 12/19/2017) (finding: (1) there is direct and circumstantial evidence to support Rosario's conviction for conspiracy; Rosario was standing on the same corner with Richard Lugo (his co-conspirator) and continuously looking north and south, acting as a "lookout," as Mr. Lugo engaged in three separate alleged drug transactions; Rosario walked a distance to a corner store and huddled with Mr. Lugo and watched Mr. Lugo handling the small objects from the M&M container as if counting them, which showed Rosario was aware of the presence of the controlled substance and engaged in trying to ascertain how many were left to be sold; following the handling of these objects by Mr. Lugo, Rosario was handed a folded unknown amount of United States currency from him, which Rosario exchanged with the driver of a parked black Honda for a black grocery bag, and after stepping between a red Ford Explorer and another vehicle out of view of the police officers for a short time, Rosario returned into view without the black grocery bag but with a knotted clear plastic bag containing small objects; Rosario gave the clear plastic bag to Mr. Lugo, who ripped the knot off the bag and poured the contents into the same M&M container he used previously to retrieve the small objects that he gave to three separate individuals, showing Rosario was responsible for paying another individual to resupply Mr. Lugo with additional packets of the controlled substance he had been previously selling from the same blue M&M

container; when Mr. Lugo was arrested, he had $65, the blue M&M container that contained 13 clear packets of cocaine with a black stick figure and a black bag with seven clear jars with purple tops containing marijuana, and when the alleged second buyer, Benjamin Montalvo, was stopped, he also had on his person three clear Ziploc packets with pictures of black stick figures on them, each containing cocaine; clearly the same packets that had been re-supplied to Mr. Lugo by Rosario were of the same type that had been previously sold to the earlier buyers, including the second buyer Mr. Montalvo; (2) there is sufficient evidence to support the conviction for PWID and intentional possession of a controlled substance; all conspirators are liable for the actions of other conspirators, *Commonwealth v. McCall*, 911 A.2d 992, 997 (Pa. Super. 2006); the instant matter is even more compelling than *McCall* because Rosario actually possessed the drugs and re-supplied his co-conspirator, whereas in *McCall* the defendant had only acted as a lookout and received United States currency from the co-conspirator after two transactions).  As we agree with the trial court's analysis, we affirm on the basis of the trial court opinion.[3]

Judgment of sentence affirmed.

---

[3] In the event of further proceedings, the parties are directed to attach a copy of the trial court's December 19, 2017, opinion to this memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/18

Circulated 10/12/2018 09:25 AM

Received
DEC 19 2017
Office of Judicial Records
Appeals/Post Trial

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0005039-2015 |
| | : | |
| v. | : | 1890 EDA 2017 |
| | : | |
| ANGEL ROSARIO | : | CP-51-CR-0005039-2015 Comm. v. Rosario, Angel<br>Opinion |

OPINION



8046647191

## PROCEDURAL HISTORY

Following a bench trial on June 29, 2016, Defendant Angel Rosario was convicted of Possession with Intent to Deliver a Controlled Substance ("PWID"),[1] Criminal Conspiracy[2] and Knowing and Intentional Possession of a Controlled Substance by Person Not Registered ("K/I")[3]. On January 6, 2017, this Court imposed a sentence of fifteen to thirty months incarceration on the possession with intent to deliver a controlled substance charge and four years reporting probation on the conspiracy charge, to run consecutive. Defendant did not file a timely appeal. On May 24, 2017, Defendant's appellate rights were reinstated Nunc Pro Tunc.

Defendant filed a timely appeal in which he argues that the evidence was insufficient to support the convictions. For the reasons stated below, the Superior Court should affirm the judgment of sentence.

## FACTUAL BACKGROUND

On January 19, 2015, at approximately 5:20pm, Police Officer Kathleen Gorman and her partner Officer Warner conducted a drug surveillance in the area of the 3400 block of A Street. (N.T. *Waiver Trial* 6/29/16 pp. 9-10)[4]. Throughout the surveillance of the targeted area, Officer

---

[1] 35 P.S. § 780-113(a)(30)
[2] 18 Pa.C.S.A. § 903
[3] 35 P.S. § 780-113(a)(16)
[4] References to the record refer to the transcript of the wavier trial recorded on June 29, 2016.

Gorman, a thirteen-month member of the Narcotics Strike Force, was positioned on the 3400 block of A Street. (N.T. *Waiver Trial* 6/29/16 pp. 16, 22-24) Officer Gorman was approximately 60 feet away from Defendant and a Hispanic male, and utilizing binoculars to enhance her vision during the surveillance. (N.T. *Waiver Trial* 6/29/16 pp. 10, 14, 22). Initially, she observed the Defendant standing on the northwest corner of A and Ontario Streets in a well-lit area next to a store. He was engaged in conversation with a Hispanic male, later identified as Richard Lugo. (N.T. *Waiver Trial* 6/29/16 pp. 10, 14, 22-23). During the officer's surveillance, both Defendant and Mr. Lugo continuously looked north and south on A Street while walking back and forth from the east to the west side of the street. (N.T. *Waiver Trial* 6/29/16 p. 10).

Officer Gorman observed individuals, on three separate occasions, approach Mr. Lugo and engage in conversation. (N.T. *Waiver Trial* 6/29/16 pp. 10, 11). During each conversation, Mr. Lugo would remove from his pocket a blue and green M&M container and pour small objects into the palm of his hand. Lugo would then pass these objects to the individuals in exchange for unknown amounts of United States currency. (N.T. *Waiver Trial* 6/29/16 p. 11). Officer Gorman could not tell the color of the objects or exactly what they were, but they appeared to be small and packaged consistent with the way that crack cocaine would be packaged. (N.T. *Waiver Trial* 6/29/16 p. 22) After Officer Gorman observed each of these suspected drug transactions, she relayed to her back-up officers a description of the alleged buyer. (N.T. *Waiver Trial* 6/29/16 pp. 11, 12).

The first individual to approach Mr. Lugo was a Hispanic male wearing a black jacket and blue jeans. *Id.* This individual left the surveillance area and was not stopped after the flash information was relayed to back-up. *Id.* Approximately five minutes later, the second individual to approach Mr. Lugo was a Hispanic male later identified as Benjamin Montalvo. (N.T. *Waiver*

2

*Trial* 6/29/16 p. 12). After the alleged sale of narcotics, Mr. Montalvo then entered a black Acura that was parked on the east side of the street and left the area south on A Street. *Id.* Officer Gorman relayed a description of both the vehicle and Mr. Montalvo to backup officers. *Id.* (N.T. *Waiver Trial* 6/29/16 p. 13). Mr. Montalvo was stopped by Officer Copper and arrested after the officer recovered from his person three clear Ziploc packets with pictures of black stick figures containing alleged cocaine and a container with a green weedy substance, alleged marijuana. (N.T. *Waiver Trial* 6/29/16 pp. 39, 40). Following the surveillance, Officer Gorman positively identified Mr. Montalvo as the individual that entered the black Acura. (N.T. *Waiver Trial* 6/29/16 p. 13). The third individual to approach Mr. Lugo exchanging small objects for an unknown amount of United States currency was a white male wearing a black and grey jacket. *Id.* This individual left the surveillance area headed eastbound on Ontario Street and was also not able to be stopped. (N.T. *Waiver Trial* 6/29/16 pp. 13, 14).

After the third individual approached and left the area, Mr. Lugo and Defendant walked to the corner store on the west side of A Street and huddled together. (N.T. *Waiver Trial* 6/29/16 p. 15). Mr. Lugo removed the M&M container from his pocket and dumped the contents into the open palm of his hand. *Id.* While holding his hand at eye level, in front of both their faces, Lugo used his finger to move the items around in the palm of his hand while the Defendant also looked into Mr. Lugo's hand. *Id.* Mr. Lugo then placed the objects back into the M&M container and put the container into his pocket. *Id.*

Next, Lugo removed an unknown amount of folded United States currency from his person and handed it to Defendant. (N.T. *Waiver Trial* 6/29/16 pp. 15, 16). Approximately five or ten minutes later, Defendant approached the driver's side of a black Honda parked on the east side of the 3400 block of A Street. (N.T. *Waiver Trial* 6/29/16 pp. 16, 33). This vehicle was

3

parked directly in front of the police surveillance vehicle. At the vehicle Defendant spoke to the driver and passed through the open window the folded United States currency. The driver then passed to him a black grocery-type bag, and left the surveillance area. Although Officer Gorman relayed the last four digits of the tag and the vehicle description, the vehicle was lost in the area and not stopped. *Id.*

Following the interaction with the individual in the black Honda, Defendant crossed the street and approached a red Ford Explorer that was parked on the 3300 block of A Street. (N.T. *Waiver Trial* 6/29/16 p. 17). Defendant, still holding the black grocery bag, stepped between the red Ford Explorer and another parked car and out of view of the officers for approximately thirty seconds. *Id.* When defendant came back into view, Officer Gorman observed that Defendant no longer had the black bag in his hand but had a clear plastic sandwich baggy in his hand. She could also see that the top of the bag was knotted and it contained small objects inside. (N.T. *Waiver Trial* 6/29/16 pp. 17, 18).

Defendant next walked back to the east side of the 3400 block of A Street to Mr. Lugo, who was still standing at the corner store, and handed Mr. Lugo the clear plastic bag. (N.T. *Waiver Trial* 6/29/16 p. 18) Mr. Lugo ripped the knot of the bag and poured the contents of the bag into the blue M&M container which he then placed back into his pocket. *Id.* Defendant and Mr. Lugo left the surveillance area and walked eastbound on the 3400 block of A Street. (N.T. *Waiver Trial* 6/29/16 pp. 18, 19). Officers Gorman and Warner waited approximately five minutes for Mr. Lugo and Defendant to return. (N.T. *Waiver Trial* 6/29/16 p. 19). When Mr. Lugo and Defendant did not return, Officers Gorman and Warner went to look for them. *Id.* Eventually, the officers spotted both Mr. Lugo and Defendant on the 3400 block of B Street, one block away from the original surveillance point. *Id.* Mr. Lugo and Defendant were out of the

4

officers' view for approximately eight to ten minutes. (N.T. *Waiver Trial* 6/29/16 p. 19). Mr. Lugo and Defendant were stopped and taken into custody. *Id.* Recovered from Defendant was $6.00 dollars in United States currency. (N.T. *Waiver Trial* 6/29/16 pp. 21, 29). Recovered from Mr. Lugo was $65 dollars in United States currency, a black bag containing seven jars with purple caps containing a green weedy substance, later determined to be marijuana, and the blue M&M container containing 13 clear Ziploc packets with black-stick figures on each side containing a white substance, later determined to be cocaine. (N.T. *Waiver Trial* 6/29/16 p. 41).

Following the arrests, Officer Gorman instructed an officer to go back to the red Ford Explorer parked on the east side of the 3300 block of A Street. *Id.* In the area of the red Ford Explorer officers recovered a black grocery type bag. (N.T. *Waiver Trial* 6/29/16 pp. 21, 26). After the surveillance, Officer Gorman positively identified the Defendant and Mr. Lugo as the two individuals she had observed earlier engage in suspected narcotic sales. (N.T. *Waiver Trial* 6/29/16 p. 21).

DISCUSSION

1.   There Is Sufficient Evidence to Support the Convictions

In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence at trial was sufficient to establish all elements of the crime beyond a reasonable doubt. *Commonwealth v. Burton*, A.3d 598, 601 (2010) (citing *Commonwealth v. Galvin*, 985 A.2d 783, 789 (2009)). In doing so, the appellate court views all of the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner. *Id.* A conviction may be sustained wholly on circumstantial evidence, and the trier of fact – while passing on the credibility of the witnesses and the weight of the evidence – is free to believe all, part or none of the evidence. *Id.*

5

a.      There is Sufficient Evidence to Support the Conviction for Criminal Conspiracy.

The Defendant asserts that the trial court erred when it convicted the Defendant of conspiracy to deliver a controlled substance when the evidence at trial was insufficient to prove the Defendant entered into any agreement with any other individual to distribute a controlled substance.

"To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another . . . to engage in the crime; and (3) the defendant or one . . . of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (2004). There is no requirement that the Commonwealth prove "that there was an express agreement to perform the criminal act; rather, a shared understanding that the crime would be committed is sufficient." *Commonwealth v. Nypaver*, 69 A.3d 708, 715 (2013). "An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances, conduct of the parties surrounding the criminal episode, and presence at the scene of the crime." *Commonwealth v. Perez*, 931 A.2d 703, 708 (2007) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 121-22 (2005). The conduct of the parties and circumstances surrounding their conduct may establish a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. *Commonwealth v. McCall*, 911 A.2d 992, 998 (2006) (citations omitted). Lastly, the requisite overt act "need not be committed by the defendant; it need only be committed by a co-conspirator." Id. at 996.

In the instant matter, there is sufficient direct and circumstantial evidence to support Defendant's conviction for conspiracy. Specifically, Defendant was standing on the same corner

6

with Mr. Lugo continuously looking north and south while three separate alleged drug transactions took place. Clearly Defendant's actions served to advance the conspiracy to possess with the intent to deliver a controlled substance by acting as a "lookout" during the time of the actual transactions by Mr. Lugo, where Lugo would retrieve small objects from a blue M&M container that he had on his person and exchange these objects for United States currency from the alleged buyers.

Next, Defendant walked a distance to a corner store where he huddled with Mr. Lugo and watched Mr. Lugo handling the small objects from the M&M container as Mr. Lugo held them up near both their faces. Mr. Lugo appeared to move these objects around as if counting them. Again, the proximity of the two defendants to one another and this Defendant looking on as his co-conspirator appears to be counting the objects taken from the M&M container shows that he is aware of the presence of the controlled substance and engaged in trying to ascertain how many are left to be sold.

Following the handling of these objects by Mr. Lugo, Defendant was handed a folded unknown amount of United States currency from him. Defendant then approached a parked black Honda, engaged the driver in conversation, and exchanged through the open window of the car the folded United States currency for a black grocery bag. Defendant then took that black bag and stepped between a red Ford Explorer and another vehicle out of view of the officers for a short time. After returning to the view of Officer Gorman, she could see that Defendant no longer had the black grocery bag, but instead carried a clear plastic knotted bag containing small objects. Defendant gave Mr. Lugo this knotted clear plastic bag and Mr. Lugo ripped the knot off the top of the bag and poured the contents into the same M&M container that he had previously used to retrieve the small objects that he gave to three separate individuals. These

7

circumstances clearly show that Defendant was responsible for paying another individual to re-supply Mr. Lugo with additional packets of the controlled substance that he had been previously selling to buyers from that same blue M&M container.

When Mr. Lugo was arrested, he had $65, the blue M&M container that contained 13 clear packets of cocaine with a black stick figure, and a black bag with 7 clear jars with purple tops containing marijuana. The second alleged buyer, when stopped, also had on his person three clear Ziploc packets with pictures of black stick figures on them, each containing cocaine. Clearly the same packets that had been re-supplied to Mr. Lugo by Defendant were of the same type that had been previously sold to the earlier buyers, including the second buyer Mr. Montalvo.

Though no words could be heard between these men by the surveilling police officers, all the above actions and circumstances demonstrate the strong direct and circumstantial evidence of Defendant's participation in aiding the co-conspirator, Mr. Lugo, in furthering the goal of selling controlled substances. Additionally, Defendant engaged in the overt acts of facilitating the re-supply of Lugo's stash by exchanging U.S. currency for the items in the black bag, taking the knotted clear plastic bag out of the black grocery bag, and giving it to Mr. Lugo. Thus, there is sufficient evidence to establish beyond a reasonable doubt that Defendant engaged in a conspiracy to distribute controlled substances.

b.  There Is Sufficient Evidence to Support the Conviction for PWID and Intentional Possession of a Controlled Substance.

The Defendants asserts the trial court erred when it convicted the Defendant of PWID and intentional possession of controlled substance when the evidence at trial was insufficient to prove Defendant ever possessed or distributed a controlled substance.

To support Defendant's conviction for PWID, the Commonwealth must have proven that he possessed a controlled substance with the intent to distribute the controlled substance. *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (2005). Possession with intent to deliver can be inferred from the quantity of the drugs possessed, the manner in which they are individually packaged, the behavior of the defendant, and other surrounding circumstances, such as a lack of drug user paraphernalia and the reputation of the area for narcotic sales activity. *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1238 (2007); *In the Interest of Evans*, 717 A.2d 542, 546 (1998). Further, all conspirators are liable for the actions of other conspirators. *McCall*, 911 A.2d at 997. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy. *Id.* Thus, successful proof of a conspiracy makes each co-conspirator fully liable for all the drugs recovered, without the necessity of proving constructive possession. *Perez*, 931 A.2d at 709.

The Superior Court of Pennsylvania held in *McCall* that because defendant was criminally liable for the actions of his co-conspirators, there was sufficient evidence to convict him of PWID. In that matter, the co-conspirator engaged in the direct sale of controlled substances to four separate individuals. The co-conspirator would exchange United States currency for small objects packaged similar to cocaine. During the transactions defendant acted as a lookout and was given United States currency from the co-conspirator after two of the transactions. Although defendant never actually handled the drugs or received the buy money directly from buyers the Superior Court given the evidence of conspiracy held defendant was liable. The instant matter is even more compelling than *McCall* because the Defendant actually possessed the drugs and resupplied his co-conspirator.

9

In the instant matter, it is clear from the evidence presented that the co-conspirator, Mr. Lugo, engaged in the direct sale of controlled substances to the three individuals. Officer Gorman was able to observe each of these individuals give United States currency for small objects. One of the individuals, Montalvo, was stopped and found on his person were three packets of cocaine that had the same distinctive markings—the black stick figure-- as the packets recovered from Mr. Lugo in the blue M&M container. Additionally, Defendant himself possessed the black bag that he exchanged for currency from the driver of the black Honda. This appeared to be the same black bag that was recovered near the red Ford Explorer. Defendant was also observed possessing the clear knotted bag that contained the small packets that appeared to be packaged like cocaine and distributing this bag to Mr. Lugo.

Thus, there is sufficient evidence to establish beyond a reasonable doubt that Defendant possessed the narcotics and possessed the narcotics with the intent to deliver.

CONCLUSION

Based on the forgoing, the judgment of sentence should be affirmed.

BY THE COURT:

KAI N. SCOTT, JUDGE
Dated: December 19, 2017

10

**Commonwealth v. Angel Rosario**
**CP-51-CR-0005039-2015**

## PROOF OF SERVICE

I hereby certify that I am this day caused to be served the foregoing this person(s) in accordance with the requirements of Pa.R.A.P. 121, and in the manner indicated below:

Attorney for the Commonwealth:

> Hugh Burns, Esquire
> Philadelphia District Attorney's Office
> Three South Penn Square
> Philadelphia, PA 19107

Type of Service:　　( ) Personal ( X ) First class mail ( ) CJC mailbox ( ) Email

Attorney for Defendant:

> Kevin A. Holleran, Esquire
> 39 Cropwell Lane
> Southampton, PA 18966

Type of Service:　　( ) Personal ( X ) First class mail ( ) CJC mailbox ( ) Email

Defendant:

> Angel Rosario
> Inmate ID# JC-4803
> SCI Coal Township
> 1 Kelley Drive
> Coal Township, PA 17866-1020

Type of Service:　　( ) Personal ( X ) First class mail ( ) CJC mailbox ( ) *Certified Mail*

DATED: 12/19/17

Jasmine Daniels, Esquire
Law Clerk to Hon. Kai N. Scott